ROCA, APPELLANT, *v.* THE REGISTRAR, RESPONDENT.

APPEAL from a Decision of the Registrar of Property of Guayama.

No. 143.—Decided June 28, 1913.

EXCHANGE OF REALTY—RECORD OF TITLE—MARGINAL NOTE.—In this case one of the contracting parties presented for admission to record a contract by virtue of which two properties recorded in the registry were exchanged; the registrar recorded the exchange in favor of the contracting party who had applied for the same and entered a marginal note on the record of the other property exchanged referring to the record of the exchange. The records appearing thus, there was presented in the registry a deed of sale to the exchanged property on whose record the marginal note had been entered, said deed having been executed by a person who, according to the marginal note and the contract of exchange, was not then the lawful owner of the property. The registrar refused to record the same. It was held that the registrar was justified in refusing to record a deed of sale which, according to the records of the registry, appeared to be executed by a person who had no right to do so.

The facts are stated in the opinion.
*Mr. C. Domínguez Rubio* for appellant.
The registrar, Felipe Cuchí, filed a brief in his own behalf.
MR. JUSTICE DEL TORO delivered the opinion of the court.

On April 15, 1913, Emilia Llabrés y Ramos executed a notarial deed of sale conveying to Rafael Roca y Roca a rural estate containing 52.50 *cuerdas* segregated from a larger property recorded in the name of the vendor in the Registry of Property of Guayama.

Upon presentation of the deed for record in the registry the registrar refused to admit the same to record on the grounds set forth in the following decision from which Rafael Roca y Roca, one of the parties to the deed, took the present administrative appeal:

"The admission to record of this document is denied because it appears from a marginal note to the first record of property No. 850 that the 118 *cuerdas* from which the 52.50 sold are segregated were acquired by Adelina Ramos by exchange with Emilia Llabrés Ramos, a cautionary notice of this denial being entered on folio 133 of volume 35 of Guayama, property No. 1764, entry letter A. Guayama, April 16, 1913. The Registrar, Felipe Cuchí Arnau."

The appellant maintains that notwithstanding the marginal note to which the registrar refers in his decision the record should be made in favor of the purchaser as the property appears recorded in the name of the vendor.

On the contrary, the registrar contends that following the practice advised by Galindo and followed in the registries since the enactment of the Mortgage Law, when the public deed of exchange of rural properties executed by Emilia Llabrés y Ramos and Adelina Ramos was presented for record it was recorded in the name of the party who made the application and a marginal note thereof was entered on the record of the other property exchanged; that this being the case, and it appearing in the registry that Emilia Llabrés had disposed of her ownership of the estate which she sold to Roca by said deed of April 15, 1913, the last-mentioned deed could not be recorded.

Every exchange, says Galindo, creates two transfers of ownership and therefore two records, one in favor of each

of the parties to the exchange. If only one of the parties applies for a record, it results that according to the registry the property acquired and that exchanged for it belongs to him. Example: Peter, the owner of property A, exchanges it for property B which belongs to John. Peter records in his name property B which he has acquired and John fails to record property A in his name. The result is that Peter appears in the registry as the owner of the two properties. What should the registrar do with regard to the property whose record is not requested? A distinction must be made. If the two properties are recorded in the same registry, inasmuch as in the record of the transfer of the ownership of property B to Peter it is shown that his ownership of property A has been transferred to John, it appears, continues Galindo, that this case may be considered as coming under article 29 of the law, which is to a certain extent an exception to article 23 of the same. The principle is laid down therein that the ownership which is mentioned expressly in the record, although it does not appear in the registry under a separate and special entry, is effective against a third party.

Applying the foregoing doctrine, on account of the fact that John's ownership of property A appears in the record, although not in a separate and special record, Peter cannot dispose of it, and if he should do so, he would not transfer the ownership to the purchaser as against John, the real owner. As Peter could demand a certificate showing that property A appears recorded in his name, unless that record had been canceled, and in view of such certificate a third party could buy it, and as it would not be just to protect the interests of John who had not taken advantage of his right to record his title to the prejudice of a third party who had purchased from a party who, according to the certificate, appeared to be the owner of the property, the injury from the latter would be greater than that from the former because it would fall on a person who had taken the necessary steps and was the victim of an official mistake. Therefore, we are of

the opinion, continues said commentator, that the registrar in recording property B in favor of Peter should enter on the record of property A a note referring to the record of property B, as follows: "This property was exchanged for number so and so, according to record number so and so." In this way, when a certificate is requested as to the ownership of property A it may be given complete and stellionate prevented, thus complying with the main object of the Mortgage Law. In view of the foregoing, if in spite of all these precautions a transfer to a third party should be effected, the registrar should refuse to record the title on the ground that it appears in the registry that another person is the owner of the property sold. See Galindo, *Legislación Hipotecaria,* volume 1, pp. 323, 324 and 325.

The opinion of the greatest of the commentators on the Mortgage Law seems to us well founded and in harmony with the principles of the said law. Besides, it has been followed in the registries of property and is now the practice therein.

Moreover, as the appellant has not cited, nor have we been able to find, any law or jurisprudence in conflict with the said opinion and practice, we are unable to agree with the appellant that the refusal of the registrar to record the deed of sale referred to herein was erroneous.

The appeal should be dismissed and the decision appealed from affirmed.

*Affirmed.*

Chief Justice Hernández and Justices MacLeary and Aldrey concurred.

Mr Justice Wolf dissented.

### DISSENTING OPINION OF MR. JUSTICE WOLF.

I am compelled to dissent from the opinion of the court.

It is true, as Galindo says, that every exchange causes two transfers of ownership, but to say that the exchange gives rise to two inscriptions is practically to beg the whole

question. The exchange is not enough in itself to cause inscriptions in the registry. Before any inscription may be made the Mortgage Law requires a number of things to be done and one of the most essential of these is that the deed be presented to the registry for such inscription. If Juan acquires the property A in exchange with Pedro and requests that such property A should be recorded in his name, it is not a fact that such petition on the part of Juan produces an inscription in the registry in favor of Pedro of the property B transferred in exchange. To obtain an inscription for himself Pedro must present the necessary deed to the registry.

The registrar is the agent of the person who requests the inscription and it is to the persons who record their property rights that the Mortgage Law lends its assistance and makes an agent of the registrar. I think this is evident from a reading of the various sections of the Mortgage Law, of which I shall cite a few.

Article 3 of the Mortgage Law provides that to permit the record of a deed the title must come in the form of a public document, and we think it is plain that the document here mentioned does not mean another record or another registry, nor yet the will of the registrar, to protect a person who has made an exchange of property, but who has not thought fit to protect his interest.

Article 9 provides what the record of the registry must contain and, among other things, the person in favor of whom the record is made and the date of its presentation in the registry; in other words, the person who is seeking the record.

Article 13 of the same law specifically provides for the record of servitudes and shows that the legislator has known how to speak clearly when he is placing an additional duty on a registrar.

Article 23, and this is perhaps one of the most important, provides that the titles mentioned in articles 2 and 5 that

are not duly recorded or annotated cannot prejudice a third person. There must be a duty on the part of the registrar to record, and this duty must spring from the specific mandate of the Mortgage Law. The advice that the commentators may give is entitled to respect when the change of an entry is a mere matter of administration, but not when it can produce the effect of annulling the rights of third persons by reason of a contract or sale executed by the person who, according to the registry, appears to be the owner of the property. The Mortgage Law is a series of precepts to protect third persons, and there is nothing in the letter or the spirit of that law which requires a registrar to defeat the rights of a third person.

Article 25 provides that the titles inscribed shall have their effect against third persons from the time they are recorded.

Coming to annotations (here we do not refer to the clearly understood duties of the registrar in regard to subdivision and the like), no duty arises under the Mortgage Law, as originally framed, to make any annotation until requested, and by our special law the registrar is required to make such annotation without a request, but only upon the presentation of a deed or the like, and his denial of the same.

There was no duty on the part of the registrar to make this annotation. A third person is only bound by the record or annotation duly made and not such annotations as are made by the registrar *de officio* and without any request or legal obligations to do so.

The only marginal notes to which the rules of the Mortgage Law refer are expressed in articles 81, 82, 158, 179, and 229, of which the first two articles were repealed by the Law of 1902. In nearly all the articles which we have cited before the law clearly expresses what the registrar must do, and the maxim *expressio unius est exclusio alterius* is applicable.

Again, in articles 11 and 16 of the Mortgage Law specific mention is made of exchanges showing that the Legislature

had exchanges in mind, yet neither here nor in any other place is the registrar required to make the marginal note that is the object of this appeal.

I maintain that the annotation made by the registrar without request of any person and without any authority of law is absolutely a nullity. It makes no difference that in the registry certain unauthorized annotations are made because a third person is not bound to go to the registry to see if there are any notations, but if he does not go, he will be penalized, according to the Mortgage Law, by any record or annotation duly made to his prejudice. But as we have said before, the record must be one that is duly made by the registrar.

There may be in fact some reasons why Adelina Ramos never recorded the property exchanged with Emilia Llabrés y Ramos, and it may be that Emilia Llabrés y Ramos at the time of her sale to Rafael Roca was in point of fact the owner of the land that she attempted to convey. If she first made an exchange of property with Adelina Ramos and then fraudulently sold the property to Rafael Roca, the act of selling to Roca would be an offense against the Penal Code of Porto Rico, section 471. The presumption of innocence is against such theory.

It is suggested that while Rafael Roca y Roca, the appellant here, may be a third person and entitled to record his property in the registry, yet the cautionary notice made by the registrar would first have to be canceled; but the argument is answered by similar reasoning to the foregoing. Article 82 of the Mortgage Law provides that inscriptions or annotations made by reason of a public deed should not be canceled, etc., but the records of which the article speaks are those which are made by virtue of public deeds and not by virtue of the voluntary acts of the registrar. This case coming here on an administrative appeal the court should have ordered the registrar to make the record of the deed presented and, if necessary, to cancel the unauthorized marginal note.